RAFAEL DIEZ DE ANDINO, ROMÁN DÍAZ COLLAZO, RAMÓN LLOVERAS SOLER, ARTURO DIEZ CINTRÓN, ENRIQUE AQUINO, JUAN MARCHÁN SICARDÓ, EDUARDO LÓPEZ TIZOL, LEANDRO LÓPEZ DE LA ROSA and EUGENIO DELGADO, Petitioners and Appellants, v. INSULAR BOARD OF ELECTIONS, Respondent and Appellee.

No. 3690. Argued January 19, 1926. Decided February 25, 1926.

L. Muñoz Morales for the appellants. The Attorney General, R. H. Todd, Jr., R. Martínez Nadal, Bolívar Pagán and Carlos Llauger for the appellee.

Mr. Justice Wolf delivered the opinion of the court.

This was an action in certiorari whereby the complainants sought to amend or vary the results of the election of November, 1924, in and for the municipality of San Juan. The action was brought early in January, 1925. The court struck some averments from the petition and finally rendered a judgment of nonsuit on the 22nd day of January, 1925. In the meantime the municipal officials were installed and were holding their positions when, on the 19th of January, 1926, more than a year from the filing of the petition, the case was presented for review in 'this court.

Given the importance of this proceeding because of its results for the community of San Juan, for the political parties that participated in the elections held in November, 1924, wherein the control of the municipal government of this city was sought, and for the petitioners principally, it seems natural that the latter should promptly perfect their appeal, but this was not done as although the appeal was taken on January 22, 1925, the hearing did not take place until one year later, due to the extensions of time requested by the said petitioners.

Upon examining the brief filed in support of their appeal we find that there is no assignment of error therein, or a separate assignment of error, before proceeding to their discussion as required by Rules 42 and 43 of this court and decided in the case of *Mercado* v. *Rosado*, 30 P.R.R. 207. However, we shall briefly discuss several of the important questions that have been raised.

The principal error alleged, and the only one in our opinion that might have changed the result, was the action of the Board of Elections in throwing out or refusing to count ballots on which the voter had marked or shown his preference for the tickets of two independent parties. In other words, the voter appeared to be voting for all the candidates of two legally distinct parties. In point of fact,

however, these two parties had fused their candidates and all the names that appeared on either ticket were exactly the same. The same person was selected by voting for either ticket. The essential thing, however, was that, in point of fact, the voter selected the same name twice, although he was only casting a single ballot. This, as held by the court below, was distinctly prohibited by section 63 (*a*) of the Elections Law as it stood in 1923. This section is to be found on pages 592–593 of the Acts of that year and reads as follows:

"Section 63.—After entering the booth the voter shall indicate his choice of candidates on the general ballot in one of the following manners:

"(*a*) If he wishes to vote the straight ticket of any one party he shall make a cross or draw a line of any dimension and form above or below the device or name of the party, or in any space in the column corresponding to said party, except in the spaces at the right and left of the names of the candidates. A ballot marked in this manner shall be counted for all the candidates whose names appear in the column of the party. If a straight-ballot mark is placed on the ticket of more than one party, the vote shall be null."

The argument of appellants is that this section has been repealed by the Acts of 1924. Admittedly, there was no direct repeal. The theory is that in the Acts of 1923 no single name could appear on more than one ticket. A man might not then be a candidate of two parties, and the contention is that this prohibition disappeared in 1924. According to appellants, in 1923 the intention was to prevent the same name being voted twice and that intention changed in 1924. And the appellants attempt to support their contention by citing the proviso of section 40 of the Elections Law as amended in 1924, page 42 of the Acts of that year, as follows:

"Provided, however, that nothing contained in this Act shall be construed in the sense of barring the nomination of any person as a candidate for the same office by two or more political parties."

We can not see how the right to include the same name

on two different tickets affects the prohibition contained in section 63 (a), *supra*. The two cited provisions in no wise conflict or interfere the one with the other. They can stand together. A candidate might obtain all the following of the Unionist party and of the Republican party in 1924, while he was prohibited from so doing in 1923. This is far from saying that a voter may choose on a single ballot two different tickets. The tickets might contain different names for some of the candidates and then a reason for the prohibition would immediately be obvious. In this particular election it is an accident that on both tickets all the names of the candidates are alike. The inspectors could not tell for which party the ticket was voted. A double ballot is an incongruity and probably would be null without express prohibition. There is no doubt that in the election of 1924 the Republican party and the Unionist party maintained an independent legal existence, although they nominated the same candidates.

It is a minor argument, perhaps, but for some purposes it is important to know for which party the ballot should be counted. We have had before us in another case a claim that a certain political party obtained the second highest number of votes cast in the election of 1924. *Pagán* v. *Towner, ante,* page 1. In the ballots rejected in this case no one could determine for whom the votes should have been counted. There is also quite a possibility that other citizens made a similar mistake in voting for the two opposite parties who also fused their candidates. The principal argument, however, is that we have in section 63 (a) a universal prohibition. *Ubi lex non distinguit, nec nos distinguere debemus.*

Appellants also charged error in some of the challenged votes awarded to the opposite forces. As found by the board, these ballots could not have affected the general result.

We are not intimating that we should have agreed with the appellants otherwise, but the solution has no practical bearing.

 We are inclined to agree with the appellee in the court below that by this writ of certiorari we can only review the things that were done before the board. In the case of *People* v. *Oms,* 34 P.R.R. 435, we intimated that perhaps in certain cases oral testimony might be given, but our notion is that such oral testimony could generally only clarify what had actually taken place before the board.

 We also agree with the appellee that the action of the board in refusing to open the ballots cast in certain precincts was a matter within the sound discretion of the board and in the absence of some indication of irregularity the discretion of said board in not opening the said ballots can not be reviewed. The mere request of the defeated candidate that all ballots should be examined was not sufficient.

The other matters raised were matters of procedure that were relatively unimportant.

The judgment should be affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.